IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES BUCHANAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 2:24-0027 |
| ) | Judge Schwab |
| INSTRUCTOR/OFFICER BRYNER, ) | Magistrate Judge Dodge |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

### I. Recommendation

It is respectfully recommended that both Defendant's motion for summary judgment (ECF No. 74) and Plaintiff's motion for summary judgment (ECF No. 79) be denied.

### II. Report

#### A. Brief Procedural History

Plaintiff James Buchanan ("Buchanan"), who is incarcerated at the State Correctional Institution at Greene, Pennsylvania ("SCI Greene"), commenced this action in January 2024 by filing a motion for leave to proceed in forma pauperis. The motion was granted and the Complaint was filed on January 16, 2024. (ECF No. 5). In this pro se civil rights action, Buchanan alleges that Defendant Instructor/Officer Eugene Bryner ("Bryner") violated his rights under the Eighth Amendment by assaulting him without provocation on July 9, 2023.

Bryner failed to respond to the Complaint and as a result, a default was entered on August 6, 2024 (ECF No. 20). After Buchanan filed a motion for default judgment, Bryner entered his appearance and moved to lift the default. This motion was granted on October 28, 2024 (ECF No. 33) and Bryner then filed an Answer to the Complaint (ECF No. 35). The parties then engaged in discovery.

On May 22, 2025, Bryner filed a motion for summary judgment (ECF No. 74), which has been fully briefed (ECF Nos. 75, 96). On May 28, 2025, Buchanan moved for summary judgment (ECF No. 79), which has also been fully briefed (ECF Nos. 80, 94).

### B. Material Facts[1]

At all relevant times related to Buchanan's claim, Bryner, an employee of the Pennsylvania Department of Corrections ("DOC"), working at SCI Greene as a Corrections Food Service Instructor. (Plaintiff's Concise Statement of Undisputed Material Facts ("PCSMF") ¶ 1) (ECF No. 81); Defendant's Concise Statement of Material Facts Not in Dispute ("DCSMF") ¶ 9) (ECF No. 76.)

On July 9, 2023, Buchanan entered the dining hall and approached the security station where Bryner was sitting. (DCSMF ¶ 10); Defendant's Responsive Concise Statement of Material Facts Not in Dispute ("DRCSMF") ¶ 11) (ECF No. 95.) According to Bryner, the video of the incident shows Buchanan placing his jacket on Bryner's desk and then standing with his arms extended at shoulder height for Bryner to conduct a pat-down search of him. Bryner asserts that as he was patting down Buchanan's lower body, Buchanan thrust his buttocks toward Bryner's face. According to Bryner, after the pat-down, Buchanan initiated physical contact by grabbing Bryner's left arm with his right hand. Bryner pulled his arm away and Buchanan raised his right hand toward Bryner. (DCSMF ¶¶ 11-17; DRCSMF ¶¶ 12-18.)[2]

---

[1] Both parties contend that they are relying solely on the video evidence. However, as explained herein, the video is not conclusive as to either party's version of the events. *See Scott v. Harris*, 550 U.S. 372 (2007).

[2] The Court has reviewed the video. It does not clearly show Buchanan thrusting his buttocks at Bryner, grabbing Bryner's hand or raising his right hand toward Bryner as Bryner describes.

According to Buchanan, as he approached the metal detector, Bryner told him to "hurry up you asshole fucking faggot." (ECF No. 80 at 2.)[3] Bryner denies making this statement. (ECF No. 81 Ex. C at 2.) According to Buchanan, he told Bryner not to talk to him like that, and Bryner then struck him in the face. (ECF No. 80 at 2.) In turn, Bryner claims that he "respond[ed] by swinging his right arm in a seemingly lackadaisical manner, striking the left side of the Plaintiff's face as the Plaintiff leans back." (DCSMF ¶ 18; DRCSMF ¶ 19.) Bryner admits, however, that he "took a swing" at Buchanan. (DRCSMF ¶ 2.)[4]

Bryner states that the video shows Buchanan "does not physically react to the strike—his head does not move, and he does not display any outward signs of pain or injury." (DCSMF ¶ 19; DRCSMF ¶ 20.) The Court's review of the video supports this statement.

As reflected in the video, shortly thereafter, Buchanan and Bryner shook hands, Buchanan remained at Bryner's desk and they exchanged fist bumps, following which Buchanan exited the dining hall. (DCSMF ¶¶ 20-21; DRCSMF ¶¶ 21-22.)

Following this incident and an incident involving another inmate, Bryner was suspended pending an investigation (ECF No. 81 Ex. A at 2-3). A Pre-Disciplinary Conference was scheduled for August 24, 2023 for Bryner to respond to a number of alleged DOC policy violations (*id.* at 4-5). In a statement provided on July 26, 2023, Bryner stated that Buchanan thrust his buttocks at him even after being told to stop. According to Bryner's statement, he then "took a swing at [Buchanan] and barely glazed him on his chin to back him away and told him to get away from me and he kept coming towards me and was advancing on me" (*id.* at 6). Bryner further represented in his statement that after this incident, he and Buchanan talked and he thought everything was ok,

---

[3] The video does not include audio.
[4] As discussed herein, Bryner confirmed this in his written statement after the incident.

3

but he admitted that it "was unprofessional of me by not reporting this incident" and he stated that "I did apologize to Inmate Buchanan" (*id.* at 7).

In a separate statement taken by Captain Hintemeyer that was also completed on July 26, 2023, Bryner wrote that "I took a swing at him and hit him in the chin" (Ex. C at 3), "I was negligent and unprofessional" (*id.* at 5) and he apologized to Buchanan because "I felt very guilty" (*id.* at 6).

After this incident, Bryner was transferred to SCI Fayette (Ex. B at 5; Ex. G at 4). He admits that disciplinary action was taken against him (Ex. D at 4). According to Buchanan, because of this incident, Bryner was found to have violated various policies, suspended for fifteen days, denied legal representation in this case and transferred to SCI Fayette. (PCSMF ¶¶ 5-7.) Bryner responds that the records cited by Buchanan do not support a conclusion that he was found guilty of having violated policies. (DRCSMF ¶ 7.)

Buchanan claims in his Complaint that because of Bryner's actions, he sustained a broken tooth, bruised jaw bone and swelling under his ear (ECF No. 5 at 5). Bryner notes that on July 12, 2023, Buchanan was evaluated by Dr. Chang and x-rays showed no evidence of a fracture. (DCSMF ¶ 22; DRCSMF ¶ 23.) Buchanan was referred to Dr. Krak for a dental examination after claiming that his Number 5 tooth had been broken during the incident, but the dentist concluded that it was not possible to determine how the tooth had been fractured. (DCSMF ¶ 23; DRCSMF ¶ 24.) According to Bryner, Buchanan's Number 5 tooth is located on the right side of the mouth, opposite the side where Buchanan was struck. (DCSMF ¶ 24; DRCSMF ¶ 25.) No support is offered for this statement, however.

4

C. **Standard of Review**

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court of Appeals has held that "where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir. 1992).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

The summary judgment rules do not apply any differently to cross-motions. *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008). "Cross-motions are no more than a

claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist." *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). If upon review of cross-motions for summary judgment the court finds no genuine dispute over material facts, then judgment will be entered in favor of the party deserving judgment considering the law and undisputed facts. *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

### D. Discussion

1. Eighth Amendment Claim

Buchanan's claim is asserted under 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Buchanan asserts a single claim under the Eighth Amendment.[5] The Eighth Amendment, which prevents the imposition of "cruel and unusual punishment," applies to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660 (1962). The Eighth Amendment "prohibits any punishment which violates civilized standards and concepts of humanity and

---

[5] Bryner first argues that, to the extent Buchanan is asserting a claim against him in his official capacity, it is barred by Eleventh Amendment immunity. However, Buchanan responds that he is not asserting an official capacity claim (ECF No. 96 at 3) and he made no official capacity claim in his Complaint (ECF No. 5 at 2).

decency." *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992), *superseded by statute on other grounds as stated in Nyhuis v. Reno*, 204 F.3d 65, 71 n.7 (3d Cir. 2000) (citations omitted). The Eighth Amendment protects inmates from the "wanton and unnecessary infliction of pain." *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

For use of force to constitute cruel and unusual punishment, the use of force must be "repugnant to the conscience of mankind" and "inconsistent with contemporary standards of decency." *Whitley*, 475 U.S. at 327. The pivotal inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (citation omitted).

The Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Rather, as the Court of Appeals has summarized:

> In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

*Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321). Nevertheless, the Eighth Amendment's prohibition of "cruel and unusual" punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quoting *Whitley*, 475 U.S. at 327).

Because there is video evidence regarding the encounter between Buchanan and Bryner, the Supreme Court's holding in *Scott v. Harris*, 550 U.S. 372 (2007), is significant to the analysis of this claim. In *Scott*, a motorist who was fleeing from police contended that he was not driving recklessly. However, a videotape of the events at issue flatly contradicted his allegations. *Id.* at 379-80. As held by the Court: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. *See also Morgan v. Borough of Fanwood*, 680 F. App'x 76, 80 (3d Cir. 2017) ("when, as here, there is reliable video footage of the facts in the record, we view the facts in the light as depicted by the videotape.") With this principle in mind, the Court turns to the video evidence that is available in this case.

The Court has reviewed the video evidence regarding Buchanan's encounter with Bryner and finds it to be inconclusive. The video has no audio and is from some distance away. Thus, Bryner's description of what Buchanan did—thrusting his buttocks at Bryner, grabbing Bryner's arm and raising his right hand toward Bryner—cannot be confirmed by a review of the video. While it is undisputed that Bryner struck Buchanan in the face with his fist, whether Bryner was reacting to actions taken by Buchanan cannot be determined based on the facts of record. Moreover, the fact that Buchanan and Bryner shook hands and exchanged fist bumps after the incident does not conclusively resolve this issue.

Thus, whether Byrner's actions represented a good-faith effort to maintain or restore discipline or excessive force cannot be resolved based on the record. Given the existence of genuine issues of material fact, the trier of fact must determine whether Bryner used excessive force in violation of Buchanan's Eighth Amendment rights.

2. Qualified Immunity

Bryner contend that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an objective decision to be decided by the court as a matter of law. *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). The burden of pleading a qualified immunity defense rests with the defendant, not the plaintiff. *Thomas v. Independence Township*, 463 F.3d 285, 293 (3d Cir. 2006). "When a defendant raises qualified immunity on summary judgment, the court must 'adop[t] ... the plaintiff's version of the facts' unless "no reasonable jury could believe it." *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 259 (2014) (quoting *Scott*, 550 U.S. at 378-80).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The ultimate question is whether the state of the law when the offense occurred gave Defendants "fair warning" that their acts were unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Court should look first to applicable Supreme Court precedent. "Even if none exists, it may be possible that a 'robust consensus of cases of persuasive authority' in the Court[s] of Appeals could clearly establish a right for purposes of qualified immunity." *Mammaro v. New Jersey Div. Child Protection & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *Taylor v. Barkes*, 575 U.S. 822, 826 (2015)).

9

Defining the right at issue is critical to this inquiry. The court must frame the right "in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted). But this does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. The Supreme Court has explained that, "[a]lthough earlier cases involving fundamentally similar facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Hope*, 536 U.S. at 741. Indeed, the Court has made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id.*

Bryner argues that he was defending himself from Buchanan, but that analysis relies on his version of the disputed facts, not Buchanan's. Accepting Buchanan's version of the facts, Bryner struck him for no reason. The law was clearly established on July 9, 2023 that corrections officers at prisons cannot conduct themselves in this manner. *See Smith v. Price*, 610 F. App'x 113, 117 (3d Cir. 2015) ("Accepting Smith's version of the facts, the defendants forced him to the ground while handcuffed and gratuitously assaulted him without provocation or cause. Accordingly, as to the second incident, he has raised a genuine dispute of material fact that precludes summary judgment on his excessive force claim.")

Thus, Bryner is not entitled to qualified immunity based on the evidence of record.

3. <u>Sovereign Immunity</u>

Bryner argues that he is entitled to sovereign immunity for acts performed within the scope of his employment. In general, employees of the Commonwealth of Pennsylvania acting within the scope of their duties are immune from liability. 1 PA. CONS. STAT. § 2310; *see, e.g.*, *Moss v.*

10

*Pennsylvania*, 838 F. App'x 702, 707 (3d Cir. Dec. 9, 2020). To this end, Pennsylvania's sovereign immunity statute affords broad immunity to state officials from state-law tort claims unless the General Assembly has specifically waived the immunity. *Id*.

Bryner's argument completely misses the mark. Buchanan's only claim in this case is asserted under the Eighth Amendment.[6] Thus, the issue is whether Bryner is being sued in his official capacity, for which sovereign immunity would apply, or in his individual capacity. Buchanan made no official capacity claim against Bryner in his Complaint (ECF No. 5 at 2) and has reaffirmed that he is not asserting an official capacity claim (ECF No. 96 at 3). Accordingly, because Bryner is being sued in his individual capacity, and not as an employee of the Commonwealth, sovereign immunity does not apply. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts.")

As a result, Bryner is not entitled to sovereign immunity with respect to Buchanan's claim.

    4. <u>Damages</u>

Bryner argues that even if Buchanan were to prevail in this case, he is limited to nominal damages because he has provided no evidence of physical injury. However, Buchanan has claimed, and Bryner disputes, that his tooth was broken as a result of Bryner's conduct. In the event that Buchanan can prove that it was Bryner's act of striking him that led to his broken tooth, this represents a physical injury that is more than *de minimis*. *See Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (bruising, swelling, loosened teeth and broken dental plate were not *de minimis* injuries in excessive force case); *Sneed v. Dixon*, 2007 WL 1202243, at *8 (N.D. Tex. Apr. 23, 2007)

---

[6] All of the decisions on which Bryner relies involved state-law claims.

("Given the extent of Plaintiff's injuries he allegedly received as a result of Defendant's use of force, notably the broken tooth, he appears to have alleged more than de minimis injuries.") Thus, assuming Buchanan can prove that his sustained physical injuries as a result of Buchanan's conduct, he can seek to recover damages associated with this injury.

At the same time, in the event that Buchanan prevails on liability but cannot prove any physical injuries, he cannot seek any damages for emotional harm. As provided in the Pennsylvania Litigation Reform Act ("PLRA"), there must be showing of a physical injury to recover for a mental or emotional injury. 42 U.S.C. § 1997e(e). The Supreme Court has "held that substantial damages may only be awarded to compensate for actual injury suffered as a result of the violation of a constitutional right." *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d Cir. 2000) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986)). *See also Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) ("We also agree with other circuits that have read [§]1997e(e) to require more than a de minimis physical injury before an emotional injury may be alleged.")

Even in the absence of any physical injury, nominal damages may be recovered for constitutional violations. *Allah*, 226 F.3d at 251. *See also Doe v. Delie*, 257 F.3d 309, 314 n.3 (3d Cir. 2001) (Section 1997e(e) "does not bar claims seeking nominal damages to vindicate constitutional rights…"); *Keenan v. City of Philadelphia*, 983 F.2d 459, 469-70 (3d Cir. 1992). Thus, Bryner is correct that if Buchanan cannot prove a physical injury, he would be limited to nominal compensatory damages if he prevails on liability.

Bryner also contends that Buchanan cannot recover punitive damages because Bryner's use of force was not excessive and served a legitimate penological purpose. The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Third Circuit has noted that this standard is disjunctive. *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989). Thus, a defendant's conduct need only involve reckless or callous indifference; it does not have to be motivated by evil motive or intent. *Brennan v. Norton*, 350 F.3d 399, 429 (3d Cir. 2003). "Punitive damages may also be awarded based solely on a constitutional violation, provided the proper showing is made." *Allah,* 226 F.3d at 251.

Here, whether Buchanan's conduct forms a possible basis for punitive damages cannot be resolved because of disputed facts in the record. Thus, Bryner is not entitled to summary judgment regarding Buchanan's claim for punitive damages.

In conclusion, the issue of what damages, if any, to which Buchanan may be entitled cannot be resolved at the summary judgment stage.

### III. Conclusion

Therefore, it is respectfully recommended that both Defendant's motion for summary judgment (ECF No. 74) and Plaintiff's motion for summary judgment (ECF No. 79) be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by [2 weeks]. Any party opposing the objections shall file a response by [2 weeks]. Failure to file timely objections will waive the right of appeal.

Dated: November 12, 2025

                                                /s/Patricia L. Dodge
                                                PATRICIA L. DODGE
                                                UNITED STATES MAGISTRATE JUDGE

cc:    JAMES BUCHANAN
        ET-4089
        SCI GREENE
        169 PROGRESS DRIVE
        WAYNESBURG, PA 15370